JOURNAL ENTRY and OPINION
{¶ 1} The State of Ohio appeals the trial court's decision to suppress from evidence a handgun seized by a police officer from a vehicle's unlocked, closed glove compartment. Appellant State of Ohio assigns the following error for our review:
"I. The trial court erred when it granted the defendant's motion to suppress as evidence a loaded weapon found in a closed, unlocked compartment of a motor vehicle when the vehicle was searched under an inventory policy that authorized the search and the search was limited to a search for property. The search was proper because officers acted in good faith and did not search other than for inventory purposes."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} Appellee Harold Crosby moved to suppress from evidence a handgun that the State of Ohio alleged he possessed in violation of the carrying a concealed weapon law. At the hearing, the State's witness testified that he observed a vehicle run a red light in the area of East 106th Street and Union Avenue. The officer identified the driver of the vehicle as Crosby's girlfriend. At the time of the stop, Crosby occupied the front passenger seat in the vehicle.
 {¶ 4} After determining that the driver did not have a driver's license on her person, Officer Durst removed her from the vehicle and frisked her for weapons. He placed her in the back of his zone car and ran a computer search to determine her driving status. She had given the officer her name, address, social security number, and birth date. The search revealed that she had a valid driver's license.
 {¶ 5} In the interim, the second officer asked Crosby for his license, but he did not have it on his person. The officer also frisked Crosby and placed him in the back of the zone car.
 {¶ 6} Although the officers were aware the driver had a valid license, they searched the vehicle. During the search of the glove compartment, they found the loaded handgun. Crosby admitted to the officers that the gun belonged to him. He informed the officers that he had the gun for a New Year's Eve party, at which time he had planned to shoot the gun into a field. Crosby requested the officer release the car to his girlfriend for her to drive home. A lieutenant arrived on the scene and concluded that since Crosby admitted the weapon was his, the girlfriend could be released to drive the car. Although the officers searched the vehicle, they failed to tow it and ultimately released it to the driver.
 {¶ 7} Based on this evidence, the trial court ruled the officers illegally seized the handgun.
 Motion to Suppress {¶ 8} In its sole assigned error, the State argues the officers seized the gun during a valid inventory search; consequently, the trial court erred when it suppressed the gun from evidence. We are not convinced.
 {¶ 9} The appropriate standard of review is as follows: "Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. * * * This is the appropriate standard because `in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard."[1]
 {¶ 10} The Fourth Amendment to the United States Constitution provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The State bears the burden of establishing that a warrantless search, which is per se unreasonable, is nevertheless reasonable pursuant to one or more exceptions to the Fourth Amendment's warrant requirement.[2] Here, the State relied on the "inventory search" exception.
 {¶ 11} The inventory exception to the Fourth Amendment's warrant requirement permits police to conduct a warrantless search of a vehicle in order to inventory its contents after the vehicle has been lawfully impounded.[3] The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function.[4]
 {¶ 12} Thus, in determining whether an inventory search is valid, a court initially must determine whether the police "lawfully impounded" the vehicle.[5] An inventory search of a lawfully impounded vehicle does not contravene theFourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution where the search is administered in good faith and in accordance with reasonable police procedures or established routine.[6]
 {¶ 13} The police officers testified that the driver ran a red light; they stopped her, removed her from the vehicle, and placed her in their zone car. They verified that she had a valid driver's license; thereafter, they searched the car and in a closed, unlocked glove compartment discovered a gun. Prior to discovering the gun, they had not placed her under arrest nor had they ordered a tow truck for the removal of the car. Based on the officers' testimony, the search of the car does not constitute a valid inventory search.
 {¶ 14} Historically, cars have been impounded because they have been seized and towed. In South Dakota v. Opperman, the car was towed for illegal parking and later searched. In Statev. Mesa, the car was seized after Mesa was arrested, and the inventory followed. In Colorado v. Bertine, the car was seized after the arrest of the defendant and inventoried before towing.
 {¶ 15} Here, the officers searched the vehicle and never arrested the driver. In State v. Dotson,[7] the Franklin County Court suggests that an impoundment is illegal when the driver is not arrested. We are mindful that in Dotson, the municipal ordinance involved defined when a vehicle is to be impounded.
 {¶ 16} Nevertheless, the officers testified that the Cleveland Police Department's standard procedure is to cite and release a driver when the driver has a valid license, cooperates, but does not have it on his or her person at the time of the stop. According to Officer Durst, a person is only arrested when it is determined that they do not have a valid license.[8]
 {¶ 17} Officer Durst's testimony mirrors the Cleveland Codified Ordinance Section 436.06, which states:
{¶ 18} "Section 435.06 Display of License
"The operator of a motor vehicle shall display his license, orfurnish satisfactory proof that he has such license, upon demand of any peace officer or of any person damaged or injured in any collision in which such licensee may be involved. When a demand is properly made and the operator has his license on or about his person, he shall not refuse to display such license. Failure to furnish satisfactory evidence that such person is licensed under RC 4507.01 to 4507.30, inclusive, when such person does not have his license on or about his person shall be prima-facie evidence of his not having obtained such license."(Emphasis added).
 {¶ 19} This ordinance makes it plain that an arrest is not necessary when a driver furnishes satisfactory proof of a license. The driver provided the officers with her name, address, birth date, and social security number. According to the officers, this information allowed them to verify via their computer that she had a valid license. This information has been found to constitute furnishing "satisfactory proof" that an individual has a valid license.[9]
 {¶ 20} The State cites to the Seventh District's opinion inState v. Mason[10] for the proposition that a person without a valid driver's license on their person may be arrested. However, in Mason, a gun was found on the defendant's person as the officers patted him down before detaining him in the zone car. They had not arrested him at that point. Additionally, it is not clear whether in Mason the defendant had provided the identifying information necessary to invoke the exception.
 {¶ 21} Interestingly, in this case, the officers' supervisor directed the officers to release the driver and allowed her to drive the car. The driver was never arrested and the car was never towed. The officers conducted the search of the car without arresting the driver and impounding the vehicle. Consequently, the officers cannot argue in good faith that they thought the inventory search was permissible based on the driver's arrest. Inventory searches must be conducted in good faith and not, "as ruse for a general rummaging in order to discover incriminating evidence."[11]
 {¶ 22} Here, the officer believed he had a basis for the arrest of the driver when he observed her run the red light. He lost the bases to arrest her when she cooperated, and he substantiated that she had a valid license. Consequently, the officer lacked any authority to seize and to search the vehicle for inventory purposes. Assuming for purposes of argument that the officer had a basis to arrest the driver, once he abandoned the arrest of the driver, he abandoned any authority to seize and to search the vehicle.
 {¶ 23} Nevertheless, the State argues the officers are permitted to search unlocked glove compartments during an inventory search. This argument is irrelevant when no basis exists for the inventory procedure. The State cannot circularly justify the search by using the fruits of an illegal search as proof that a crime had been committed. In other words, the fact that the officers found the handgun cannot be used to justify the search of the car. We conclude the search of the vehicle was illegal. Accordingly, the State's sole assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
C. Gallagher, P.J., concurs, T. McMonagle, J., concurs in judgment only.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] State v. Lloyd (1998), 126 Ohio App.3d 95.
[2] Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph two of the syllabus.
[3] State v. Mesa, 87 Ohio St.3d 105, 108-109, 1999-Ohio-253. See South Dakota v. Opperman (1976), 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000.
[4] Opperman, 428 U.S. at 370, 96 S.Ct. at 3097,49 L.Ed.2d at 1006, fn 5.
[5] State v. Cole (1994), 93 Ohio App.3d 712, 715.
[6] State v. Mesa, supra at 110, citing Colorado v. Bertine
(1987), 479 U.S. 367.
[7] (1990), 66 Ohio App.3d 182.
[8] Tr. at 33.
[9] State v. Matthews, 9th Dist. No. 20749, 2002-Ohio-2206; State v. Killingsworth (Nov. 4, 1999), Cuyahoga App. No. 74999; State v. Digiorgio (1996), 117 Ohio App.3d 67.
[10] (1996), 115 Ohio App.3d 187.
[11] Id.