[Cite as *State v. Baber*, 2012-Ohio-3467.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   97973

# STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

# ERIC BABER

DEFENDANT-APPELLEE

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555858

**BEFORE:**   E. Gallagher, J., Blackmon, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   August 2, 2012

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

By:    T. Allan Regas
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


**ATTORNEY FOR APPELLEE**

Mark DeFranco
Mark A. DeFranco Law Offices
55 Public Square
Suite 1600
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} The state of Ohio appeals the decision of the trial court, granting Eric Baber's motion to suppress evidence that was seized and the statements made in violation of *Miranda v. Arizona*. In particular, the state argues the trial court erred in suppressing the evidence because Baber ran from the arresting officer, giving the officer reasonable suspicion to search Baber and that Baber's statements made during the booking process were voluntary and not given as a result of any questioning. For the following reasons, we affirm the decision of the trial court.

{¶2} On October 25, 2011, Cleveland Heights police officer Matthew Lasker observed Baber walking in the middle of Avondale Avenue, a well-lit, one-way street in Cleveland Heights at approximately 1:30 a.m. Officer Lasker stopped Baber to issue a citation for walking in the middle of the road. Baber provided to the officer his Ohio drivers license. Officer Lasker informed Baber that he was going to issue a citation and testified that Baber was not free to leave.

{¶3} Other than the offense of "walking in roadway prohibited, with accessible sidewalks," (tr. 47), Officer Lasker did not witness appellant commit any other criminal activity. Officer Lasker testified that during his interaction with appellant, Baber did

not make any furtive movements, did not reach into his pockets, did not have any bulges in his clothing and was not verbally combative.

{¶4} Notwithstanding the foregoing, Officer Lasker ordered Baber to place his hands on the police car so that he could perform a pat-down search before placing Baber in the back of the police car. Baber did not place his hands on the police car and told Officer Lasker that he was just walking home. Officer Lasker again asked Baber to submit to a pat-down search and even offered to drive Baber home after the issuance of the citation. Officer Lasker asked Baber for a third time to place his hands on the police car and approached Baber. At that point, Baber fled. Officer Lasker had not even begun issuing the citation when Baber ran from the area.

{¶5} Officer Lasker chased Baber for approximately two blocks through several streets, driveways and backyards before apprehending him in front of 1643 Coventry Road. During the chase, Officer Lasker did not see Baber throw anything to the ground, reach into his pockets or hold onto his waistband while running. Officer Lasker got on top of Baber to restrain him from making any movements and to keep him still until backup arrived.

{¶6} While waiting for backup, but prior to issuing the *Miranda* warnings, Officer Lasker asked Baber why he ran. Baber responded that he had a gun in his right front pants pocket. Baber remained compliant with Officer Lasker, and when backup arrived, appellant was arrested without any further incident.

**{¶7}** Officer Jeffrey Mecklenburg transported Baber to the Cleveland Heights Police Department and brought him into the booking area. Officer Mecklenburg did not provide Baber with *Miranda* warnings. During the booking process, Baber asked Officer Mecklenburg "if he was in serious trouble." (Tr. 55.) Officer Mecklenburg responded, "You got a lot to worry about with the gun. The other charges I won't worry too much about." Officer Mecklenburg did not testify as to what Baber said in response to this statement. However, in his own motion to suppress, Baber admitted that he told Officer Mecklenburg that he carried a gun for protection.

**{¶8}** On November 3, 2011, Baber was charged by way of information with one count of carrying a concealed weapon and one count of possessing a defaced firearm. On November 15, 2011, Baber filed a motion to suppress the seized handgun, claiming that Officer Lasker conducted an illegal search and seizure of his person and that the recovered handgun should be suppressed as fruit of the poisonous tree. On January 9, 2012, Baber filed a supplemental motion to suppress the statements made to Officer Lasker at the time of his apprehension and to Officer Mecklenburg during the booking process.

**{¶9}** The trial court conducted a hearing on the motion to suppress on February 2 and February 9, 2012. During the hearing, the state conceded that Baber's statement to Officer Lasker at the time of his apprehension was elicited before proper *Miranda* warnings had been given and that it should be suppressed. (Tr. 75.) Additionally, the

state conceded that had Officer Lasker performed a pat-down search of Baber at the police car, any evidence seized as a result of that search would be suppressed.   (Tr. 71.)

**{¶10}**   On February 16, 2012, the trial court granted Baber's motion to suppress. The trial court, in its ruling, failed to comply with Crim.R. 12(F), which provides that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record."   We find, however, that the record is sufficiently clear for us to review this matter.

**{¶11}**   The state appeals, raising the following assignment of error:

"The trial court erred by granting appellee's motion to suppress evidence."

> Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. * * *   This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."   However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.

> *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998); *State v. Crosby*, 8th Dist. No. 86393, 2006-Ohio-2227.

**{¶12}**   The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.  *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are *per se* unreasonable, subject to a few specifically established exceptions.  *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507,

19 L.Ed.2d 576 (1967).  One of those exceptions is the rule regarding investigative stops announced in *Terry*.  Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*, supra.  A police officer may lawfully stop a vehicle, motorized or otherwise, if he has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation.  *See State v. Buckner*, 2d Dist. No. 21892, 2007-Ohio-4329, ¶ 8.

{¶13}  Here, the record clearly reflects that the officer observed Baber walking in the roadway   in violation of a Cleveland Heights City Ordinance and that his reason for stopping him was to issue a citation for that violation.  Consequently, based on the above, the officer was permitted to stop Baber.

{¶14}  That said, the authority to stop an individual does not necessarily equate to authority to search the individual and place him or her in the back seat of the cruiser. *State v. Roberts*, 2d Dist. No. 23219, 2010-Ohio-300, ¶ 16.  *See also State v. Evans*, 67 Ohio St.3d 405, 409, 618 N.E.2d 162 (1993) (stating a *Mimms* order does not automatically bestow upon the police officer the authority to conduct a pat-down search for weapons).  *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).  Instead, we must consider whether, based on the totality of the circumstances, the officer had a reasonable, objective basis to believe that the motorist is armed and

dangerous before patting him down for weapons in anticipation of placing him in the cruiser. *Evans*, *supra*, citing *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991).

{¶15} In its brief, the state of Ohio makes two separate arguments concerning the attempted pat-down search on Avondale Avenue: (1) because the pat-down search never happened, the trial court acted preemptively in granting the motion to suppress and (2) Officer Lasker was entitled to place Baber in the patrol car during the issuance of the citation for safety reasons and Officer Lasker's safety required him to pat-down Baber before doing so. We disagree with both claims.

{¶16} Under *Terry*, a police officer may frisk a detainee's outer clothing for concealed weapons when the officer has a reasonable suspicion that the suspect is armed and dangerous. *Id*. at 27. The standard to perform an investigative search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances. *Id*. The proper inquiry is whether the officer reasonably determines that the detainee is armed and presently dangerous to the officer or others. *State v. Hoskins*, 8th Dist. No. 80384, 2002-Ohio-3451. Reasonable suspicion must be supported by specific and articulable facts and circumstances which, together with any rational inferences that may be drawn therefrom, reasonably support a conclusion that the detainee is armed and dangerous. *State v. Locklear*, 8th Dist. No. 90429, 2008-Ohio-4247.

**{¶17}** Here, Officer Lasker did not have reasonable suspicion that Baber was armed and dangerous when he attempted to perform the pat-down search. Officer Lasker testified at the hearing on the motion to suppress that at the time he initiated the pat-down search, he was not in fear for his safety, he did not believe Baber was armed, Baber made no furtive movements, did not reach into his pockets, did not throw anything to the ground and had been cooperative with the officer during his detention. Tr. 29-39.

**{¶18}** Because the record in this case does not contain any facts or circumstances to suggest that, under the totality of the circumstances, Officer Lasker had a reasonable suspicion that Baber was armed and dangerous, the continued seizure and attempted search of Baber's person was illegal. *See Locklear*, ¶ 36. We find it immaterial that Officer Lasker never completed the pat-down search of Baber's person; Officer Lasker's actions in attempting to conduct a pat-down search without a lawful basis constituted an illegal seizure. Additionally, counsel for the state at the trial court level conceded that had Officer Lasker performed that pat-down search of Baber, the fruits of that search would have been suppressed. Tr. 71.

**{¶19}** Next, the state argues that Officer Lasker acted properly because he initiated a pat-down search in anticipation of placing Baber in the back of the police car to issue the citation for walking in the roadway. The state claims that Officer Lasker's actions were motivated by concern for his and Baber's safety. The state cites to *State v.*

*Evans*, 67 Ohio St.3d 405, 1993-Ohio-186, 618 N.E.2d 162; and *State v. Lozada*, 92 Ohio St.3d 74, 2001-Ohio-149, 748 N.E.2d 520, in support of its position. We find the state's argument to be erroneous.

{¶20} The Ohio Supreme Court, through its cases of *Evans* and *Lozada*, have covered this area of law thoroughly. In *Lozada,* the court examined a case factually similar to the present matter. An Ohio State Patrol Trooper stopped Lozada for speeding and Lozada produced his license. The officer removed Lozada from the car, performed a pat-down search and recovered crack cocaine. The court determined that the officer's search for weapons before placing Lozada in the police car was unreasonable.

{¶21} The court concluded that *Lozada* was not a *Terry* case because there was no evidence that the state trooper believed that the defendant was armed and dangerous. Rather, the state, similar to the present case, urged the court to conclude that if a person is legitimately detained in a patrol car, the nature of the detention, i.e., placement of the detainee in close proximity to the officer, raises safety concerns that necessitate searching any person for weapons before placing that person in the patrol car. *Id*. at 76. The court declined to adopt the state's argument. The Ohio Supreme court held that during a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in the patrol car during the investigation is for the convenience of the officer. *Id*. at 77.

**{¶22}** The court in *Lozada* distinguished its facts from its prior decision in *Evans,* in which the Supreme Court held that "[t]he driver of a motor vehicle may be subjected to a brief pat-down search for weapons where the detaining officer has a lawful reason to detain said driver in a patrol car."  The lawful basis for detaining the driver in a patrol car was that Evans failed to produce a driver's license during the traffic stop.  Therefore, the court determined that it was reasonable for the officer, who had a legitimate reason to so detain that person in a patrol car, be interested in guarding against an ambush from the rear.  *Id*. at 78.  However, in *Lozada*, the defendant produced a valid driver's

license when requested by the state trooper, thus it was unreasonable to subject the defendant to a pat-down search for weapons.

**{¶23}** Lastly, the *Lozada* court analyzed the state's argument that there are legitimate public policy concerns, such as the safety of the officer and the driver, that justify an officer's placement of a driver into his patrol car.  The court weighed the intrusiveness of a pat-down search against the reasonableness of officer safety and concluded that

> during a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition.  *Id*. at 79.

The court gave the example of a hostile crowd threatening the officer and the driver, as

an example of a dangerous condition necessitating the placement of the driver into the patrol car. Ultimately, the court concluded that no dangerous condition existed and that the state trooper's search of the defendant for weapons before placing him in the patrol car was unreasonable. *Id*. at 81.

{¶24} We find the facts of the instant case similar to those in *Lozada.* The state argues that Officer Lasker planned on placing Baber in the patrol car for safety reasons. The "safety reasons" provided by the state were that Officer Lasker and Baber did not know each other and that they were alone on a dark roadway. This argument is without merit. Officer Lasker's testimony during the hearing on the motion to suppress was that he was not in fear for his safety and that he did not believe Baber was armed and dangerous. Further, Officer Lasker had no lawful basis to detain Baber in the patrol car; Baber provided his driver's license and, by Officer Lasker's own account, was cooperative during the detention. Lastly, there is no evidence that there existed any dangerous condition warranting the placement of Baber in the patrol car. Officer Lasker and Baber were alone on a well-lit, one-way street on which there was no other traffic. We conclude that Officer Lasker's attempted pat-down search of Baber in order to place him in the patrol car to issue the citation was unreasonable.

{¶25} Based on the foregoing, we find that Officer Lasker's illegal seizure of Baber tainted the subsequent seizure of the handgun and any statements made by Baber to the police. In other words, the seized handgun and Baber's statements are "fruit of

the poisonous tree" that the officers acquired as a result of their prior, unlawful conduct. *See Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**{¶26}** Anticipating this court's conclusion, the state argues that the handgun and Baber's statement to Officer Mecklenburg need not be suppressed because exceptions to the exclusionary rule apply to allow the submission of the evidence.

**{¶27}** The United States Supreme Court has created three exceptions to the exclusionary rule for evidence obtained as an indirect result of a constitutional violation. *Id*. These are (1) the independent-source doctrine, *see Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), (2) the inevitable-discovery doctrine, *see Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 and (3) the attenuation doctrine. *See Nardone*. The state argues the independent source doctrine and attenuation doctrine apply in the present case. We disagree.

**{¶28}** The state argues that Baber's own actions in fleeing from Officer Lasker constituted an independent source and provided the officer with the reasonable suspicion to search Baber that would have revealed the handgun in Baber's pants pocket. Therefore, the handgun should be admissible. The independent source exception allows admission of evidence that has been discovered by means entirely independent of any constitutional violation. *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985);

*Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

{¶29}   We decline to find the independent source exception to the exclusionary rule in this case.   In particular, Baber's flight was not independent from Officer Lasker's illegality; it was directly related.   Officer Lasker ordered Baber to submit to an illegal pat-down search of his person, which was the exact reason Baber fled; he wanted to avoid the search.   In response to Baber's flight, Officer Lasker followed and eventually apprehended Baber and that is when he seized the handgun.   Baber did not commit a separate crime in fleeing from the officer.   While the state argues he could have been charged with failure to comply with the lawful order or signal of a peace officer, the fact is that he was not so  charged.   Further, the order given by Officer Lasker was not lawful; it amounted to an illegal seizure of Baber's person.

{¶30}   The independent source exception to the exclusionary rule does not apply to the present case.   Lastly, the state argues that the attenuation doctrine applies to allow the admission of both the handgun and the statement to Officer Mecklenburg.   Pursuant to the attenuation doctrine, secondary evidence that derives from a constitutional violation may be admissible at trial if the causal connection between the original illegality and the evidence sought to be admitted has become so attenuated as to dissipate or extinguish the taint.   *State v. Harden*, 11th Dist. No. 98-L-234, 2000 WL 688727 (May 26, 2000).   As stated by the United States Supreme Court:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the

police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (Citation omitted.)

*Wong Sun.*

**{¶31}** The attenuation doctrine most often arises in the context of incriminatory statements made by an accused following a purportedly illegal arrest. *Harden.* This is essentially the scenario presented by the instant appeal.

**{¶32}** The United States Supreme Court and lower federal and state courts invoking the attenuation doctrine have justified its use by focusing upon the lack of a deterrent effect on police misconduct that exclusion of the evidence would have. *Id.* The concept of "dissipation of the taint" is an attempt to identify the point in time at which the detrimental consequences of illegal police conduct become so attenuated that the deterrent effect of the exclusionary rule can no longer justify its cost to society. *Brown v. Illinois*, 422 U.S. 590, 609, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part).

**{¶33}** In *Brown*, the United States Supreme Court discussed the factors to be considered when determining whether the causal connection between the illegality and the evidence sought to be admitted has become so negligible as to extinguish any constitutional taint. The court held:

> The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is

dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, * * * and, particularly, the purpose and flagrancy of the official misconduct are all relevant. * * * The voluntariness of the statement is a threshold requirement. * * * And the burden of showing admissibility rests, of course, on the prosecution." (Footnotes and citations omitted.)

*Brown*, 422 U.S. at 603-604.

**{¶34}** In the present case, we cannot say that the attenuation doctrine applies. The seizure of the handgun and Baber's subsequent statement to Officer Mecklenburg were the direct and immediate result of Officer Lasker's illegal action. Baber did not receive *Miranda* warnings and only a brief amount of time passed between the illegal seizure and Baber's statement to Officer Mecklenburg. As such, there was no "dissipation of the taint" and both the handgun and the statement should be suppressed.

**{¶35}** We therefore overrule the state's sole assignment of error.

**{¶36}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____

_____
EILEEN A. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, A.J., and
MARY EILEEN KILBANE, J., CONCUR