# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106418**

---

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## MICHAEL McQUEEN

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-620245-A

**BEFORE:** Laster Mays, J., McCormack, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 27, 2018

## ATTORNEYS FOR APPELLANT

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Christopher D. Schroeder
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

## ATTORNEYS FOR APPELLEE

Mark A. Stanton
Cuyahoga County Public Defender

By:   Noelle A. Powell
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant, the state of Ohio, appeals the trial court's decision to grant defendant-appellee, Michael McQueen's ("McQueen"), motion to suppress. We affirm.

{¶2} McQueen was charged with one count of having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(2); one count of improperly handling firearms in a motor vehicle, a fourth-degree felony, in violation of R.C. 2923.16(B); one count of receiving stolen property, a fourth- degree felony, in violation of R.C. 2913.51(A); and one count of carrying a concealed weapon, a fourth-degree felony, in violation of R.C. 2923.12(A)(2). McQueen filed a motion to suppress, arguing that all of the evidence was a result of an unconstitutional arrest. The trial court agreed and granted McQueen's motion to suppress.

## I. Facts

{¶3} On August 6, 2017, McQueen was outside with a group of five or six young men. Sergeant James Neal ("Sgt. Neal") was patrolling the area because eight days earlier, a murder had occurred in the area. Sgt. Neal noticed the young men, but McQueen stood out because he had on a dark hoodie and what appeared to be a scarf over his face. The scarf was actually his T-shirt that was pulled around his neck. Sgt. Neal thought that McQueen looked suspicious because it was 74 degrees outside. As Sgt. Neal drove past the group, McQueen took off the hood of his hoodie and pulled the T-shirt off his face. Sgt. Neal began tracking McQueen's movements as McQueen stepped away from the group. While following McQueen, Sgt. Neal observed McQueen

enter a red Pontiac on its passenger side. Two minutes later McQueen exited the Pontiac and began walking down the street. Sgt. Neal walked parallel to McQueen, and then McQueen started running.

{¶4} Sgt. Neal chased McQueen into a residential apartment building to the second floor landing. Sgt. Neal observed McQueen taking off his hoodie and T-shirt. Sgt. Neal ordered McQueen to the ground, handcuffed him, and patted him down. Sgt. Neal did not find anything on McQueen during the pat down. Sgt. Neal also conducted a warrant check on McQueen that revealed no outstanding warrants. However, McQueen was detained, and Sgt. Neal placed McQueen in the back of the patrol car. Lieutenant Dale Homerick ("Lt. Homerick"), Sgt. Neal's supervisor, responded to Sgt. Neal's call for assistance. After McQueen was taken into custody, Sgt. Neal retraced the route that McQueen took to the apartment building from the red Pontiac. Sgt. Neal did not discover anything of an illegal nature. Lt. Homerick arrived while McQueen was in the back of Sgt. Neal's patrol car. Lt. Homerick looked inside the front passenger window of the red Pontiac and saw a firearm lying on the front passenger seat. Sgt. Neal also observed the firearm. Sgt. Neal ran a search for the license plate and found that it was not owned by McQueen, nor was the gun registered to McQueen.

{¶5} On August 15, 2017, the Cuyahoga County Grand Jury returned a four-count indictment against McQueen. McQueen filed a motion to suppress, alleging that the police obtained the gun in violation of the Fourth, Fifth, and Fourteenth Amendments to

the United States Constitution. The trial court granted the motion to suppress and stated the following in its journal entry,

> Even if one were to accept that the stop was proper, it is further shown to be baseless when the defendant was stopped, patted down and frisked, that there was nothing found upon the defendant of an illegal nature. All further investigation of the defendant at that point should have ceased.
>
> The United States Supreme Court in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), stated that a suspect may not be detained, even momentarily, without reasonable, objective ground for doing so. This is always a fact dependent determination and as explained previously, there are no reasonable objective grounds for stopping the defendant simply because he had on odd clothing for the weather and that he looked at a police officer. *See also*, *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Agee*, 8th Dist. Cuyahoga No. 94035, 2010-Ohio-5074; and *State v. Bryson*, 142 Ohio App.3d 397, 755 N.E.2d 964 (8th Dist.2001).
>
> For all the reasons stated above, the [m]otion to [s]uppress is granted.

Journal Entry No. 100953911 (Oct. 17, 2017), p. 3.

{¶6} The state filed this appeal assigning two errors for our review:

I.   The trial court erred by finding that Sgt. Neal lacked reasonable suspicion to stop McQueen; and
II.  The trial court erred by suppressing the firearm recovered from the front seat of the appellee's vehicle, which was in plain view in a place where the officers had a lawful right to be present.

## II.    Motion to Suppress

{¶7} In the state's first assignment of error, they contend that the trial court erred by granting McQueen's motion to suppress by finding that Sgt. Neal lacked reasonable suspicion to stop McQueen.

> "Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence.   * * *

This is the appropriate standard because 'in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.'" However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.

(Citations omitted.) *State v. Baber*, 8th Dist. Cuyahoga No. 97973, 2012-Ohio-3467, ¶ 11, quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998); *State v. Crosby*, 8th Dist. Cuyahoga No. 86393, 2006-Ohio-2227.

{¶8} According to

[t]he Fourth Amendment of the United States Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords Ohioans the same protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).

*State v. Grayson*, 8th Dist. Cuyahoga No. 102057, 2015-Ohio-3229, ¶ 17.

{¶9} However there are exceptions to the warrant requirement.

A "Terry stop" is another exception to the warrant requirement that allows an officer to stop and investigate suspicious behavior, even without probable cause to arrest, if the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, it requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry* at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances "as viewed through the eyes of the reasonable and prudent

police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

When considering the "totality of the circumstances," police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). A court reviewing the officer's actions must give due weight to the officer's experience and training and must view the evidence as it would be understood by those in law enforcement. *Andrews* at 87-88.

*Id*. at ¶ 20-21.

{¶10} Sgt. Neal's cumulative information is as follows: that he was patrolling the area because a murder had recently occurred in the area; that there were no complaints called in; that he noticed a group of young men standing around and one, McQueen, stuck out in the crowd; the individual was wearing a hoodie with a scarf covering the bottom half of his face; it was 74 degrees outside; the individual looked at Sgt. Neal as he drove past; he then pulled the hood off of his head; and the individual started walking around, resulting in Sgt. Neal believing that McQueen was acting suspicious. Sgt. Neal stated that based on his 17 years of being a police officer, McQueen looked like he was "looking for somewhere to go" and that McQueen's behavior was "indicative of males trying to hide or drop illegal items."

{¶11} We find that the activities described by Sgt. Neal do not rise to the level of reasonable suspicion. This court has previously stated that "officers must have reasonable suspicion that criminal activity is imminent and they must be able to point to specific facts to justify the conclusion that the defendant is engaged in criminal activity."

*State v. Scales*, 8th Dist. Cuyahoga No. 87023, 2006-Ohio-3946, ¶ 14.   "A person's mere presence in an area of high crime activity does not suspend the protections of the Fourth and Fourteenth Amendments to the United States Constitution."   *State v. Chandler*, 54 Ohio App.3d 92, 560 N.E.2d 832 (8th Dist.1989), paragraph two of the syllabus.

> Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause. *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810, citing *Terry* at 27. Accordingly, "a police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557. Reasonable suspicion requires that the officer "point to specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion." *Id*., citing *Terry* at 21.

> "In making a determination of reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts."   *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (1995).   An appellate court views the propriety of a police officer's investigative stop in light of the totality of the surrounding circumstances.   *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus (1988), approving and following *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus (1980).

*State v. Logan*, 8th Dist. Cuyahoga No. 96190, 2011-Ohio-4124, ¶ 12-13.

> {¶12} In its journal entry, the trial court stated,

> [Sgt.] Neal was very clear, direct, and honest in his testimony and stated that he did not observe any criminal activity when he came upon the defendant and the other 4 or 5 young men.   He did not see any drugs, any hand to hand transactions, no furtive behavior, no guns, or anything else to believe that any criminal activity had occurred or WAS going to occur.

Journal Entry No. 100953911 (Oct. 17, 2017), p. 2.   After Sgt. Neal's initial observance of McQueen that we find did not rise to the level of reasonable suspicion, Sgt. Neal

continued to watch McQueen. Sgt. Neal then observed McQueen enter and exit a red vehicle. While McQueen was in the vehicle, Sgt. Neal did not observe any furtive movement or anyone approach the vehicle. Thereafter, McQueen started to run, and Sgt. Neal chased after him. During the chase, Sgt. Neal did not see McQueen go into his pockets or throw anything. McQueen was stopped inside of a building, detained, and handcuffed. A warrant check was then completed on McQueen that did not reveal any wants or warrants. Sgt. Neal stated that people run because they either have something illegal on them or are wanted. Neither hunch was true in this case. And if we had found that the initial observance of McQueen was justified, we find that McQueen's detention should have concluded here. We find that any potential probable cause which may have existed was no longer available to justify a continued detention of McQueen. *State v. McDowell*, 5th Dist. Ashland No. 99COA01328, 2000 Ohio App. LEXIS 4717, 11 (Oct. 6, 2000).

{¶13} There was no evidence that criminal activity had occurred, was going to occur, or that McQueen was wanted. However, McQueen's detention continued. Thereafter, a review of the path that McQueen ran from the red vehicle to the apartment building did not reveal anything illegal. Yet, McQueen remained in custody and was transported to another location. Thus, events which justify a temporary detention at one location may not suffice to justify involuntary movement to another location. *United States v. Berry*, 670 F.2d 583 (5th Cir.1982); *see also State v. McFarland*, 4 Ohio App.3d 158, 160, 446 N.E.2d 1168 (8th Dist.1982).

{¶14} In light of the totality circumstances, we find that Sgt. Neal lacked reasonable suspicion to stop and detain McQueen. Therefore, we overrule the state's first assignment of error.

{¶15} In the state's second assignment of error, the state contends that the trial court erred by suppressing the firearm recovered from the front passenger seat of the vehicle where McQueen was observed sitting. The gun was in plain view. It was determined that neither the gun nor the vehicle was registered to McQueen. The officers did not have a reasonable suspicion to pursue, search, or seize McQueen, so any evidence obtained as a result is inadmissible. "According to the 'exclusionary rule,' 'all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.' *Mapp*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)." *State v. Kiraly*, 8th Dist. Cuyahoga No. 92181, 2009-Ohio-4714, ¶ 26.

{¶16} The state argues that the gun was in plain view and could have been discovered by the officers without McQueen's arrest. The state did not present this argument to the trial court at the motion to suppress hearing. "The failure to raise an argument to the trial court results in the waiver of that argument for purposes of appeal." *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-2897, ¶ 106. However, we will address the argument for the purposes of providing context and structure for a warrantless search. While it is true that the officers could have randomly discovered the gun in the vehicle that was not on their radar until McQueen sat in it, they did not. The

officers found the gun in a vehicle that was not registered to McQueen. The gun was not found while McQueen was in the vehicle nor did the officers observe McQueen placing the gun in the vehicle. "'[P]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" *State v. Dent*, 8th Dist. Cuyahoga No. 94823, 2011-Ohio-1235, ¶ 14, quoting *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). McQueen was not within reaching distance at the time of the search, and the arrest was unlawful.

{¶17} The state also argues that there were two separate incidents: the arrest and then the search of the vehicle. They argue that the two were not tied together. We disagree. The police searched McQueen and found nothing. They also ran a check for warrants, and McQueen did not have any warrants. At that point, the police should have released McQueen. However, they continued to detain him and then drove him along the path they chased him on and found nothing. Then while McQueen was still detained, they went back to the car and observed the gun lying on the seat.

{¶18} The detention of McQueen and finding the gun was continuous and not a separate act. "When justification for the original detention ends, there must be an additional reasonable suspicion of illegal activity in order to justify the continued detention. *State v. Tyler*, 10th Dist. [Franklin] No.13AP-220, 2013-Ohio-4673, ¶ 15." *State v. Scarberry*, 2016-Ohio-7065, 72 N.E.3d 173, ¶ 26 (10th Dist.). The original

reason the officers detained McQueen was because Sgt. Neal thought that he was in possession of something illegal in nature or that he was wanted. Once both thoughts turned out to be false that resulted in no additional reasonable suspicion of illegal activity, McQueen should have been released. Based on the foregoing, we find the officers' illegal seizure of McQueen tainted the subsequent seizure of the gun. In other words, the seized gun is fruit of the poisonous tree that the officers acquired as a result of their prior, unlawful conduct. *See Baber*, 8th Dist. Cuyahoga No. 97973, 2012-Ohio-3467, at ¶ 25. Therefore the exclusionary rule applies, and we overrule the state's second assignment of error.

**{¶19}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LARRY A. JONES, SR., J., CONCURS;
TIM McCORMACK, P.J., DISSENTS WITH SEPARATE OPINION

TIM McCORMACK, J., DISSENTING:

{¶20} I respectfully dissent.

{¶21} I would find that the totality of the circumstances preceding the officer's stop of McQueen shows that the stop was reasonable. An officer can stop an individual for investigative purposes if the officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

{¶22} In determining the reasonableness of Sgt. Neal's stop of McQueen, we must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a stop or search. *Terry* at 21.

{¶23} Sgt. Neal indicated four factors that led to his suspicions regarding McQueen: McQueen's presence in a high crime area, one where a murder had occurred eight days earlier; his notable nervousness upon seeing Sgt. Neal; his wearing a hoodie and a T-shirt over his face in hot weather; and his unprovoked flight from Sgt. Neal. Sgt. Neal stated that, in his experience, people tend to run from police if they have warrants or are in possession of illegal items. He further pointed to his experience performing undercover drug buys where dealers, upon seeing police, would look around for places to dump their contraband. These four specific, articulable facts, taken together with Sgt. Neal's experience as a police officer, were sufficient to provoke

reasonable suspicion that justified Sgt. Neal's interaction with McQueen. In light of the foregoing, I would affirm the state's first assignment of error.

{¶24} With respect to the state's second assignment of error, I find that the trial court erred in suppressing the firearm when its discovery was permissible according to the plain view doctrine.

{¶25} The plain view doctrine holds that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Three requirements must be met for the plain view doctrine to apply: (1) the police are not violating the Fourth Amendment in arriving in the place where the evidence was found; (2) the incriminating character of the evidence is "immediately apparent"; and (3) the police have a lawful right to access the object itself. *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

{¶26} Here, all three requirements are met. First, the car was parked on a public roadway, alongside a sidewalk. Any person, including Sgt. Neal and Lt. Homerick, had the right to walk on the sidewalk. The firearm was on the front seat of a car, clearly visible to a passerby on the sidewalk through the cars untinted windows. The officers were not violating the Fourth Amendment when they walked along a public street and noticed the firearm on the passenger seat.

{¶27} The second requirement is also met because the incriminating nature of the firearm — specifically, the violation of R.C. 2923.16(B) — was immediately apparent. This statute states that "no person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." The fact that no one was in the car when the firearm was discovered is irrelevant here because the firearm was lying on the passenger seat and easily accessible to anyone who would be in the car.

{¶28} Finally, the third requirement was also met here. Upon seeing the firearm, Sgt. Neal had probable cause to believe that the vehicle contained evidence of a crime, specifically R.C. 2923.16(B). Therefore, he was permitted to search the vehicle based on this probable cause.

{¶29} For these reasons, I would sustain both of the state's assignments of error and reverse the decision of the trial court.