DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Heriberto Torres, appeals from his conviction in the Lucas County Court of Common Pleas for possession of marijuana. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} On April 3, 2007, appellant was indicted on charges of possession of marijuana, a felony of the third degree, and trafficking in marijuana, also a felony of the third degree. Appellant pled not guilty to the charges and filed a motion to suppress. *Page 2 
 {¶ 3} On May 24, 2007, a hearing on the motion to suppress was held, and evidence of the following was adduced. On December 13, 2006, five or six Toledo police officers, with guns drawn, entered a carry-out owned and operated by appellant, to execute a search warrant for that location. Upon entering the carry-out, Detective Michael Awls presented defendant with a copy of the search warrant. When defendant asked the purpose of the search warrant, Detective Awls informed defendant that it was for "marijuana, narcotics."
 {¶ 4} Awls patted appellant down and removed keys and money from appellant's pocket. Awls then placed these items on a counter.
 {¶ 5} Sergeant Robert Marzec read appellant his Miranda warnings in English, and provided him with a card on which the Miranda warnings were written in both English and Spanish. After being read his rights, appellant acknowledged that he understood.
 {¶ 6} As the search was underway, Awls asked appellant if he would consent to a search of his residence. Appellant responded by saying, "I don't have anything here, you can search my house, you can search my car." Without any further discussion, Awls took from the counter the keys that he had earlier removed from appellant's pocket, and used them to open a pickup truck that was parked on the street outside the carry-out. On the driver's side floor of the truck officers found two plastic bags, inside of which were a total of 12 one-pound bags of marijuana. *Page 3 
 {¶ 7} Following the discovery of the marijuana, appellant was handcuffed and placed under arrest. The search of both the carry-out and the truck took less than fifteen minutes.
 {¶ 8} Following the evidentiary hearing, the trial court concluded that appellant knowingly and voluntarily gave the police consent to search his vehicle, and on that basis the trial court denied appellant's motion to suppress.
 {¶ 9} On August 8, 2007, appellant withdrew his guilty plea and entered a no contest plea to the lesser included charge of possession of marijuana, a felony of the fourth degree. He was sentenced to four years of community control, including a six-month period of commitment in the Corrections Center of Northwest Ohio ("CCNO").
 {¶ 10} On September 17, 2007, a notice of appeal was timely filed. Appellant's six-month commitment to CCNO was stayed pending the outcome of this appeal.
 {¶ 11} In this appeal, appellant raises the following assignment of error:
 {¶ 12} "THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS, HOLDING THAT HIS CONSENT WAS FREELY AND VOLUNTARILY GIVEN."
 {¶ 13} Appellate review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. State v.Richardson, 3d Dist. No. 13-06-21, 2007-Ohio-115, ¶ 13. When reviewing a decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id. After accepting the trial court's properly supported findings of fact, the *Page 4 
appellate court must conduct its own, independent review, to determine whether the trial court applied the correct legal standard. Id.
 {¶ 14} In order for a defendant to prevail on a motion to suppress evidence as the fruit of a Fourth Amendment violation, he must first establish that the search or seizure was illegal. United States v.Holmes (C.A.D.C.2007), 505 F.3d 1289, 1292. Specifically at issue in the instant case is whether the police officers exceeded the scope of a protective frisk authorized by Terry v. Ohio (1968), 392 U.S. 1, when they seized appellant's keys from inside his pocket.
 {¶ 15} The law is clear that police seizure of items that are neither weapons nor apparent contraband during a Terry pat down exceeds the doctrine's limited exception to the Fourth Amendment's prohibition on warrantless searches and seizures. Holmes, supra, at 1292.
 {¶ 16} In this case, the keys were neither weapons nor contraband. Although there was some general testimony by Detective Awls that "keys can be used as a weapon," Awls never stated that he considered appellant's keys to be a weapon. Neither was there any evidence or assertion to suggest that the keys constituted contraband. Because the keys were neither weapons nor contraband, we find that the officers had no right to remove them from appellant's pocket during the pat down.
 {¶ 17} Having established a Fourth Amendment violation, appellant must next make a prima facie showing of a causal nexus between that violation and the evidence he seeks to suppress. Holmes, supra, at 1292; see, also, United States v. Kornegay (C.A.1, *Page 5 
2005), 410 F.3d 89, 93-94; Alderman v. United States (1969),394 U.S. 165, 183. In the instant case, appellant has met his burden of showing that but for the illegal seizure of his keys, the police likely would not have discovered the marijuana in his car. That is, if the police had not removed appellant's keys during the pat down, they would not have been able to view them to determine whether appellant possessed a car key. Also, even if they had somehow been able to determine that appellant had a car key, they would have to have done something more than simply take the key from the counter in order to get into appellant's car. Upon hearing appellant say, "I don't have anything here, you can search my house, you can search my car," they would have had to obtain, if not a search warrant for appellant's vehicle, at least the cooperation of appellant in handing over the keys.
 {¶ 18} Because appellant has met his burden in showing a prima facie causal nexus between the illegal seizure and the challenged evidence, the evidence must be suppressed unless the state proves by a preponderance of the evidence: (1) that the evidence would have been discovered inevitably; (2) that the evidence was discovered through independent means; or (3) the discovery of the evidence was so attenuated from the illegal search or seizure that the taint of the unlawful government conduct was dissipated. See Holmes, supra, at 1293.
 {¶ 19} In the instant case, only the third option is even arguably applicable, with the state devoting much of its argument to the proposition that appellant — in telling the officers, "I don't have anything here, you can search my house, you can search my car" — consented to the search of his vehicle. *Page 6 
 {¶ 20} Even if we assume, arguendo, that appellant's statement is properly construed as a consent, we note that when a defendant's consent is obtained after illegal police activity, "[t]he consent will be held voluntary only if there is proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal action." State v. Retherford, 93 Ohio App.3d 586, 602, citingFlorida v. Royer, 460 U.S. 491, 501. "Factors to consider in determining whether the consent is sufficiently removed from the taint of the illegal [seizure] include the length of time between the illegal seizure and the subsequent search, the presence of intervening circumstances, and the purpose and flagrancy of the misconduct." United States v.Richardson (C.A.6, 1991), 949 F.2d 851, 858; see, also, Brown v.Illinois (1975), 422 U.S. 590, 603-604; State v. Retherford, supra.
 {¶ 21} In the instant case, appellant's "consent" was obtained within 15 minutes of the illegal seizure of appellant's keys. Thus, there was no significant time lapse between the seizure and the request to search. As indicated by the court in Holmes, a short temporal gap between an unlawful seizure and a defendant's consent weighs heavily against a finding that the consent was an act of free will sufficient to purge the taint of the earlier police conduct. See Holmes, supra, at 1295, citingUnited States v. Washington (C.A.9, 2004), 387 F.3d 1060, 1073 (holding that 15 minutes was insufficient); United States v. Maez (C.A.10, 1989),872 F.2d 1444, 1456 (holding that 45 minutes was insufficient). *Page 7 
 {¶ 22} Further, there was no intervening circumstance that might have served to attenuate the connection between the illegal seizure and the ultimate discovery of the marijuana. Here, the entire incident occurred during the execution of a search warrant at appellant's business premises. After appellant was patted down and the keys were unlawfully removed from his pocket, he was asked if he would consent to a search of his residence. When appellant responded, "I don't have anything here, you can search my house, you can search my car," Detective Awls immediately grabbed the keys from the counter and used them to open the pickup truck that was parked on the street outside the carry-out. A lack of intervening circumstances, like a lack of a substantial temporal gap, between a seizure and subsequent consent weighs heavily against a finding that a defendant's consent was sufficient to purge the taint of the unlawful seizure. See Holmes, supra, at 1295 (where the defendant faced a coercive situation at the time he gave consent because his only hope of avoiding arrest was to consent to a search and hope that the officers would not discover his hidden contraband, the absence of intervening circumstances strongly weighed against a finding that defendant's consent was sufficient to purge the taint of the unlawful seizure).
 {¶ 23} Although there may have been a lack of flagrant police misconduct, this lack was not sufficient to show that appellant's consent amounted to an intervening act of free will that broke the causal link between the unlawful seizure of appellant's keys and discovery of the marijuana in his car. Cf, Holmes, supra, (holding that where there was virtually no temporal gap between the seizure and consent and no meaningful intervening *Page 8 
circumstances, the lack of flagrant police misconduct was not sufficient to compensate for the strongly coercive circumstances otherwise surrounding defendant's grant of consent to search).
 {¶ 24} Because the state failed to meet its burden of proof to show that the illegality of the seizure of appellant's keys was cured by his subsequent "consent" to the search of his vehicle, we are constrained to find that the trial court erred in denying appellant's motion to suppress evidence.
 {¶ 25} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 9