[Cite as *State v. Tyler*, 2013-Ohio-4673.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-220 |
| | | (C.P.C. No. 12CR-2405) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Darius D. Tyler, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 22, 2013

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

T. BRYANT, J.

{¶ 1} Defendant-appellant, Darius D. Tyler, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. Because the trial court did not err in denying appellant's motion to suppress, we affirm.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On May 11, 2012, appellant was indicted for possession of cocaine in violation of R.C. 2925.11, a fifth degree felony. On August 31, 2012, he filed a motion to suppress the statements he made to police, and the evidence obtained by police on the night of the offense.[1] Appellant later supplemented his motion. Plaintiff-appellee, the

---

[1] Appellant actually filed two separate motions to suppress on August 31, 2012. However, the trial court discusses them as one combined motion. We will do the same.

State of Ohio, filed a memorandum contra and the trial court held a hearing on the motion to suppress on February 20, 2013. At the hearing, Columbus Police Officers Pat Daugherty and Kyle Andrews testified for the state and relayed the following account of the night in question.

{¶ 3} On March 1, 2011, at approximately 11:45 p.m., Officers Daugherty and Andrews were dispatched to the area of 18th and Cleveland Avenues on multiple reports of shots fired. Based on the information they received, they were looking for a shooter on foot. They arrived in the area a few minutes after being dispatched and encountered appellant walking in the middle of 18th Avenue near Cleveland Avenue. The officers stopped appellant to cite him for being a pedestrian in the roadway, to determine whether he was the shooter and, if not, whether he had any information about the shooter.

{¶ 4} Due to the circumstances, namely responding to shots fired and encountering appellant in that exact area, the officers asked appellant if he was carrying any weapons. Appellant responded that he was not. However, Officer Daugherty elected to pat down appellant's clothing to check for weapons in the interest of officer safety. Officer Daugherty testified that, during the patdown, appellant kept reaching into his left pocket and the officers had to warn him to stop doing that for safety purposes. Officer Andrews also noticed appellant fidgeting and reaching towards his left pocket as if he was concerned about something inside the pocket. Both officers testified that this raised suspicion because, based on their experiences as police officers, individuals sometimes compulsively motion towards or reach for contraband they are carrying while in the presence of police.

{¶ 5} Prompted by appellant's body language, Officer Andrews looked down at the pocket in question, which was hanging open, and observed a pill bottle. Officer Andrews asked appellant about the pill bottle and whether the pills belonged to him. Appellant responded that the pills were not his, they belonged to his godmother. Appellant then removed the pill bottle from his pocket and showed it to the officers without being asked to do so.

{¶ 6} The officers told appellant that, depending on what the pills were, it could be illegal for him to possess them. Appellant said he knew it could be illegal. Officer Andrews testified that, based on the possible illegality of the pills, there was reason to

suspect appellant might be engaged in criminal activity. Officer Daugherty then asked appellant if he was carrying anything else illegal, to which appellant responded that he had crack cocaine in his possession. The officers confiscated the cocaine, which led to appellant's arrest.

{¶ 7} Appellant also testified at the suppression hearing. His account of the incident differed in that he alleged the officers searched inside his pockets during the patdown for weapons and that is how they discovered the cocaine. Appellant denied admitting that he had crack cocaine, and contended that the officers were lying about that admission.

{¶ 8} Following the hearing, the trial court issued a written decision denying appellant's motion to suppress on February 28, 2013. The trial court credited the testimony of the officers over the testimony of appellant. The court determined that the patdown for weapons was based on reasonable, articulable suspicion grounded in the facts that appellant was violating a city ordinance by walking in the roadway, and he was discovered in the area of the shots fired reports. The trial court further found that there was nothing in appellant's motion to suppress or his supplement that suggested his admissions regarding the pills and crack cocaine were anything but voluntary. Therefore, appellant's constitutional rights were not violated.

{¶ 9} After the trial court denied the motion to suppress, appellant pled no contest to possession of cocaine, was found guilty, and sentenced accordingly. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶ 10} Appellant presents the following assignment of error for our review:

> THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF AN INVESTIGATION AND DETENTION THAT EXCEEDED THE SCOPE OF THE GROUNDS JUSTIFYING THE INITIAL DETENTION, WHICH WAS FOR THE ISSUANCE OF A PEDESTRIAN CITATION.

## III. STANDARD OF REVIEW

{¶ 11} " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier

of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Internal citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

## IV. DISCUSSION

{¶ 12} Preliminarily, we note that appellant does not dispute the propriety of the initial stop or patdown for weapons pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), nor does he dispute the trial court's finding that his admissions about the pills and crack cocaine were voluntary. Therefore, we will not address those issues on appeal.

{¶ 13} Additionally, we find that the trial court's findings of fact were based on competent and credible evidence adduced through Officers Daugherty and Andrews. Therefore, we accept those facts to be true. With the officers' account of the evening as our factual basis, we address appellant's assignment of error.

{¶ 14} Appellant argues, pursuant to his assignment of error, that the officers violated his constitutional rights because they expanded the scope of the detention and investigation beyond the original purpose without having reasonable, articulable suspicion to do so. We disagree. We find that Officers Daugherty and Andrews maintained reasonable, articulable suspicion throughout their encounter with appellant. Therefore, to the extent the stop exceeded its original purpose, there was no constitutional error.

{¶ 15} This court has held that "an investigatory stop which is prolonged and extends beyond the scope of the initial detention must be supported by a reasonable suspicion the suspect is engaged in another criminal activity." *State v. Owens*, 10th Dist. No. 03AP-423, 2004-Ohio-5159, ¶ 18. In other words, " 'an officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is

afoot.' " *State v. Vanderhoff*, 106 Ohio App.3d 21, 26 (11th Dist.1995), quoting *State v. Retherford*, 93 Ohio App.3d 586, 600 (2d Dist.1994).

{¶ 16} The Supreme Court of Ohio has also instructed us that " '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' * * * [T]he surrounding circumstances are to be evaluated 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' * * * In this regard, a reviewing court 'must give due weight to [the officer's] experience and training and view the evidence as it would be understood by those in law enforcement.' " *State v. Morris*, 10th Dist. No. 09AP-751, 2010-Ohio-1383, ¶ 12, quoting *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus, and *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 17} In the case at bar, Officer Daugherty testified that appellant kept reaching into his left pocket during the *Terry* patdown for weapons, and the officers had to warn him more than once to keep his hand out of that pocket. Officer Andrews likewise testified that appellant was fidgeting and compulsively motioning towards the same pocket. Both officers testified that, based on their experiences as police officers, this behavior indicated appellant might be carrying something illegal in that pocket. Thereby, the officers articulated their reasonable suspicion regarding the contents of the pocket. Based on that suspicion, Officer Andrews merely looked into the pocket and posed a reasonable inquiry about the contents to appellant. Appellant replied that he was carrying pills that did not belong to him, and he acknowledged carrying those pills might be illegal. Officer Andrews testified that, based on the possible illegality of the pills, the officers had reasonable suspicion that appellant was engaged in criminal activity apart from the shots fired in the area or walking in the roadway. Therefore, Officer Daugherty asked a reasonable follow-up question, specifically whether appellant was carrying anything else illegal. Appellant replied that he was carrying crack cocaine, which led to his arrest.

{¶ 18} Considering these facts, we find that the officers' actions and questions were based on reasonable, articulable suspicion throughout the encounter with appellant. Given the totality of the circumstances that evening and during the stop, they acted as reasonable police officers. Therefore, we overrule appellant's assignment of error.

## V.  CONCLUSION

{¶ 19} Accordingly, having overruled appellant's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

T.  BRYANT,  J.,  retired,  formerly  of  the  Third  Appellate District,  assigned  to  active  duty  under  authority  of  the  Ohio Constitution, Article IV, Section 6(C).

_____