[Cite as *State v. Peeks*, 2020-Ohio-889.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-291 |
| v. | : | (C.P.C. No. 18CR-1387) |
| Halbert J. Peeks, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 10, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant. **Argued**: *Steven L. Taylor.*

**On brief:** *Jeremy Dodgion*, for appellee. **Argued**: *Jeremy Dodgion.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a decision and entry of the Franklin County Court of Common Pleas granting a motion to suppress evidence filed by defendant-appellee, Halbert J. Peeks. For the reasons that follow, we reverse and remand with instructions.

**I. Facts and Procedural History**

{¶ 2} Peeks was indicted by a Franklin County Grand Jury on one count of possession of cocaine, a first-degree felony in violation of R.C. 2925.11, and one count of trafficking in cocaine, a first-degree felony in violation of R.C. 2925.03. The charges were based on evidence obtained from a pat-down search of Peeks conducted following a traffic stop on October 12, 2017. Peeks filed a motion to suppress the evidence, arguing there was no reasonable suspicion to detain him or probable cause to arrest him and that all evidence

obtained resulted from an illegal search.  The state filed a memorandum in opposition to the motion to suppress.

{¶ 3}   The trial court conducted a hearing on the motion to suppress, where the state presented testimony from Officer Dustin Willis of the City of Whitehall Division of Police, who stopped Peeks's vehicle, conducted a pat-down search, and arrested him. Officer Willis testified that on October 12, 2017, while working a patrol assignment and traveling north on Robinwood Avenue in his police cruiser, he observed a white Chevrolet Impala traveling east on East Broad Street at what he visually estimated to be a speed exceeding the posted speed limit.  Officer Willis turned onto East Broad Street and continued observing the vehicle.  He testified he saw the Impala pass another vehicle in the right lane (i.e., passing on the right side of that vehicle) and then move into the left travel lane.  Officer Willis also observed the Impala weave in its lane and cross left and right of the marked lane lines.  Officer Willis testified he saw the Impala come to an abrupt stop at a traffic signal; it then delayed in advancing when the traffic signal changed before accelerating rapidly and veering left.  Officer Willis activated the signal on his police cruiser to initiate a traffic stop.  The Impala moved into the right travel lane but did not immediately stop.  Officer Willis testified that, in his experience, the Impala took much longer to come to a stop than other vehicles during a normal traffic stop.  After initiating the traffic stop, Officer Willis radioed in the license plate number for the Impala and was advised the owner had a prior license suspension due to a drug-related offense.

{¶ 4}   After the Impala stopped, Officer Willis approached the Impala and made contact with Peeks, who was in the driver's seat.  Officer Willis testified Peeks stared straight ahead and refused to make eye contact. Officer Willis stated he immediately detected the odor of alcohol and that Peeks responded slowly to questions, with slurred speech. Peeks denied drinking that evening. Officer Willis testified Peeks's eyes were glassy and his motor skills appeared to be impaired because his movements were rigid and clumsy; he also indicated Peeks appeared highly nervous during the traffic stop.  Officer Willis indicated he asked Peeks to exit the vehicle because he was concerned Peeks might be armed due to the length of time he took to pull over and because he intended to conduct field sobriety tests.  While conducting a pat-down search for weapons, Officer Willis felt a hard, rock-like substance in Peeks's waistband. After handcuffing Peeks, Officer Willis

removed a sock from Peeks's waistband containing what Officer Willis believed to be a large chunk of crack cocaine. Peeks was arrested, and no field sobriety tests were conducted.

{¶ 5} A recording from Officer Willis's police cruiser video camera was also played at the suppression hearing. The recording depicted the events that occurred beginning approximately one minute prior to Officer Willis activating the siren on his cruiser. The recording began with Officer Willis's cruiser approaching the traffic signal where the Impala stopped. The recording further depicted the events that occurred after Officer Willis activated his signal, including the Impala coming to a stop, Officer Willis approaching the Impala and speaking with Peeks, Peeks exiting the vehicle, the pat-down search and discovery of contraband, and Peeks being placed under arrest.

{¶ 6} Following the hearing, Peeks filed a supplemental memorandum in support of his motion to suppress and the state filed a supplemental memorandum in opposition to the motion to suppress.

{¶ 7} On April 22, 2019, the trial court orally granted the motion to suppress and issued findings of fact and conclusions of law. The court concluded there was a valid basis to stop Peeks for a traffic violation but there was no reasonable suspicion of criminal activity to support a pat-down search or probable cause to arrest Peeks. The court subsequently issued a written entry granting the motion to suppress that referred to its prior findings of facts and conclusions of law.

## II. Assignments of Error

{¶ 8} The state appeals and assigns the following four assignments of error for our review:

> [I.] THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE ESSENTIAL FINDINGS ON MATERIAL ASPECTS OF THE SUPPRESSION ISSUES.
>
> [II.] THE TRIAL COURT ERRED WHEN IT REJECTED CERTAIN FACTORS AS A MATTER OF LAW.
>
> [III.] THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS WHEN THE TOTALITY OF THE CIRCUMSTANCES SUPPORTED REASONABLE SUSPICION TO FRISK AND PROBABLE CAUSE TO ARREST AND SEARCH.
>
> [IV.] THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE EVIDENCE WITHOUT MAKING ANY FINDING AS TO

WHETHER THERE WAS A CULPABLE VIOLATION OF THE FOURTH AMENDMENT.

## III. Discussion

## A. Standard of review

{¶ 9} Review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress.").

## B. Constitutional protections

{¶ 10} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Ohio Constitution contains a nearly identical provision. Article I, Section 14 Ohio Constitution.[1]

---

[1] Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment to the United States Constitution. *See State v. Robinette*, 80 Ohio St.3d 234, 239 (1997); *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981). However, it is well-recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 42 (1993) ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *See State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against searches and seizures made by members of law enforcement who lack authority to make an arrest); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 22 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors).

{¶ 11} "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Jimeno* at 250. In keeping with this principle, both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures, subject to certain exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009), quoting *Katz* at 357 (" '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "); *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 20, citing *State v. Fowler*, 10th Dist. No. 10AP-658, 2011-Ohio-3156, ¶ 11-12. "When a motion to suppress evidence obtained in a warrantless search is filed, the state has the burden of establishing that one of the exceptions applies." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 39. *See also Columbus v. Ellyson*, 10th Dist. No. 05AP-573, 2006-Ohio-2075, ¶ 5 ("Upon a motion to suppress evidence on Fourth Amendment grounds, the state has the burden of showing, by at least a preponderance of the evidence, that the search and/or seizure fits within one of the defined exceptions to the Fourth Amendment's requirement of a warrant.").

{¶ 12} The state argued Officer Willis's pat-down search of Peeks was justified based on his reasonable suspicion that Peeks might have a concealed weapon. The state further argued Officer Willis lawfully seized the narcotics under the plain feel doctrine when conducting the pat-down search. Under *Terry v.* Ohio, 392 U.S. 1 (1968), an investigatory stop and a frisk or pat-down for weapons may be conducted without violating the Fourth Amendment ban on unreasonable searches and seizures when: (1) the investigatory stop is lawful, and (2) the investigating officer reasonably suspects the person stopped is armed and dangerous. *State v. Scarberry*, 10th Dist. No. 15AP-775, 2016-Ohio-7065, ¶ 23. An investigative detention without a search warrant is lawful "when [a] police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009), citing *Terry*. "To justify a brief investigative stop or detention of an individual pursuant to *Terry*, a police officer must be able to cite specific and articulable facts which, taken together with rational

inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity." *State v. Fisher*, 10th Dist. No. 10AP-746, 2011-Ohio-2488, ¶ 18, citing *State v. Williams*, 51 Ohio St.3d 58, 60-61 (1990). To conduct a pat-down search during an investigatory stop, the investigating officer must reasonably suspect that the person stopped is armed and dangerous. *Scarberry* at ¶ 23, citing *Johnson* 555 U.S. at 327. "[E]ven when the first condition is satisfied by a lawful stop for purposes of investigating a traffic violation, the second condition—a reasonable suspicion that the person stopped is armed and dangerous—must still be satisfied in order to justify a pat-down search during a traffic stop." *Id.* at ¶ 27.

{¶ 13} The state also argued Officer Willis's pat-down search of Peeks was justified as a search incident to arrest, asserting Officer Willis had probable cause to arrest Peeks for operating a vehicle while intoxicated. A search incident to a lawful custodial arrest is an exception to the Fourth Amendment warrant requirement. *State v. Dingess*, 10th Dist. No. 01AP-1232, 2002-Ohio-2775, ¶ 8, citing *Chimel v. California*, 395 U.S. 752 (1969). A law enforcement officer may conduct a warrantless search of both an arrestee and the area within the arrestee's immediate control when the search is incident to a lawful arrest. *Dingess* at ¶ 8. There must be a lawful arrest based on probable cause for the search-incident-to-arrest exception to apply. *Id.* at ¶ 9. Probable cause for an arrest exists if all the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe an individual has committed or was committing an offense. *Id.* "In determining whether a police officer has probable cause to arrest a suspect for [operating a vehicle while under the influence ("OVI")], a court considers whether, at the moment of arrest, the officer had information within the officer's knowledge, or derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe the suspect was driving under the influence of alcohol, drugs, or both." *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 20. A reviewing court considers the totality of the circumstances in determining whether probable cause to arrest existed. *Id.*

{¶ 14} The trial court concluded Officer Willis had reasonable suspicion to stop Peeks for committing a traffic violation and, therefore, the initial investigatory stop was valid. However, the trial court concluded Officer Willis lacked reasonable suspicion to support a *Terry* frisk within the context of the investigatory stop. The court also concluded

Officer Willis lacked probable cause to arrest Peeks for OVI and, therefore, the pat-down search was not authorized as a search incident to arrest.

## C. Failure to make essential findings

{¶ 15} The state asserts in its first assignment of error the trial court erred by failing to make essential findings of fact relating to material issues involved in the motion to suppress. The state sets forth 19 factors in support of its argument that Officer Willis had reasonable suspicion to frisk Peeks as part of the investigatory stop or probable cause to arrest him. The state claims the trial court discussed a number of the 19 factors but failed to resolve them, focusing instead on whether the cruiser video evidence corroborated Officer Willis's testimony. The state argues the trial court's lack of definitive findings makes it impossible to determine whether the court found that the factors cited by the state were present.

{¶ 16} Crim.R. 12(C) and (F) govern the process by which a trial court must adjudicate a pretrial motion to suppress evidence. *Limoli* at ¶ 38. Crim.R. 12(F) provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Essential findings are "the fundamental or necessary reasons relied upon by the trial court in reaching its final determination on the issue." *Columbus v. Lewis*, 77 Ohio App.3d 356, 361 (10th Dist.1991). This court has previously held that where a trial court failed to make critical determinations or findings disclosing why the state's evidence failed to present a basis to search a defendant, the record was insufficient to allow appellate review of the decision to grant a motion to suppress. *State v. Forrest*, 10th Dist. No. 10AP-481, 2010-Ohio-5878, ¶ 23.

{¶ 17} In *Forrest*, two Columbus Police officers approached a parked vehicle in an area where they had previously witnessed narcotics and weapons crimes. *Forrest* at ¶ 3. They observed two men seated in the front seats of the vehicle but did not witness any criminal activity as they approached the vehicle. One of the officers testified that both occupants of the vehicle appeared nervous, with one man having a wide-eyed, mouth-open expression, and the other refusing to look at the officer after initially noticing him. The officer testified this type of nervousness was not a normal reaction in his experience. *Id.* at ¶ 4. The officer further testified he saw the man in the driver's seat move his hand from his lap to the center console, then return it to his lap and turn his shoulders as if he sought to shield the officer's view of the interior of the vehicle. The officer testified he was concerned

the man might be concealing a weapon. *Id.* at ¶ 5. When ordered to exit the vehicle, the man in the driver's seat rolled up the window, removed the keys from the ignition, and remained in the vehicle, refusing to look at the officer. After a second order to exit the vehicle, the officer opened the driver's side door; he grasped the man's right hand and pulled it toward him and could then see a clear plastic bag of heroin between the vehicle's center console and the man's body. The officer removed the man from the vehicle, searched him, and arrested him. *Id.* at ¶ 6-7. The trial court granted the defendant's motion to suppress evidence obtained from the search. In its ruling from the bench, the trial court made four specific factual findings: (1) the officers were patrolling the Southfield neighborhood area of Columbus on the date of the arrest, (2) they searched a 2003 Ford Explorer parked on Omar Drive, (3) they did not observe any traffic or motor vehicle violations involving the 2003 Ford Explorer, and (4) the defendant was seated in the driver's seat of the 2003 Ford Explorer. The court concluded that based on those facts, as a matter of law, the officers lacked reasonable, articulable suspicion of criminal activity or probable cause to search the vehicle. *Id.* at ¶ 8. In a subsequent written decision, the trial court reiterated its initial four findings of fact and added that Omar Drive is located in the Southfield neighborhood, and reiterated its conclusion that the officers lacked reasonable, articulable suspicion of criminal activity or probable cause to search the vehicle. *Id.* at ¶ 9.

{¶ 18} On appeal, this court noted that the state did not argue the search was justified as part of a traffic stop; rather, the state argued the defendant's facial expressions, furtive movements and attempt to shield something from the officers' view, and the character of the neighborhood created a reasonable, articulable suspicion of criminal activity to support the search. *Id.* at ¶ 21. The trial court's findings of fact and conclusions of law failed to acknowledge this argument from the state and the evidence proffered to support it. *Id.* As a result, this court found the trial court's essential findings failed to explain its decision to grant the motion to suppress. The court reversed and remanded with instructions to articulate in its findings of fact the evidence that led it to conclude the officers lacked a reasonable, articulable suspicion of criminal activity. *Id.* at ¶ 22.

{¶ 19} Similarly, in several cases this court has found that a trial court failed to make essential factual findings in determining the issue of whether a defendant gave valid consent for a search. *See State v. Spain*, 10th Dist. No. 09AP-331, 2009-Ohio-6664, ¶ 27-29; *Limoli* at ¶ 39-49; *State v. Beard*, 10th Dist. No. 14AP-830, 2015-Ohio-3595, ¶ 20-21.

In those cases, the trial court's failure to make critical determinations or findings resulted in a record that was insufficient for effective appellate review, and this court reversed and remanded for further proceedings and findings on the relevant issues. *Spain* at ¶ 29; *Limoli* at ¶ 49; *Beard* at ¶ 22.

{¶ 20} The state argues that 19 factors supported a finding of reasonable suspicion to justify a *Terry* frisk or probable cause to arrest Peeks: (1) the time of the incident (2:15 a.m.), (2) traveling at a high rate of speed, (3) passing another vehicle on the right and moving back into the left-hand travel lane, (4) weaving in lanes of travel, (5) crossing to the left and right of marked lane lines, (6) a late and quick stop at a traffic signal, (7) a delay in driving forward when the traffic signal changed, (8) quickly accelerating and veering left once he did drive forward from the signal, (9) the time taken to pull over after Officer Willis activated his signal, (10) a prior drug-offense license suspension, (11) staring straight ahead and not making eye contact when Officer Willis approached the vehicle, (12) the immediate odor of alcohol, (13) denial of alcohol consumption, (14) claim that he was delayed in pulling over due to traffic, but no vehicles were in the way, (15) slurred speech, (16) glassy eyes, (17) impaired motor skills, (18) being overly nervous and tense, and (19) being slow to comply with the command to exit the vehicle. The first five factors cited by the state were not depicted in the video recording or were not visible on the recording because of the distance from Peeks's vehicle. However, the trial court largely focused on whether it could see the state's alleged factors on the video recording. The trial court suggested it did not believe portions of Officer Willis's testimony but also expressly declined to find Officer Willis not to be credible, stating ambiguously: "I'm not discrediting all the officer said. However, I'm not crediting him totally because he either exaggerated or the video just doesn't bear it out." (Apr. 22, 2019 Tr. at 4.) The court did not address Officer Willis's testimony that Peeks delayed in driving forward when the traffic signal changed or that Peeks claimed he was delayed in pulling over due to other traffic, despite the fact that no other cars appear to have impeded him. Likewise, the trial court did not address Officer Willis's testimony that Peeks had glassy eyes. Based on our review of the record, it is unclear which parts of Officer Willis's testimony the court found to be credible.

{¶ 21} Moreover, with respect to several of the factors cited by the state that were depicted on the video recording, it is difficult to discern the trial court's ultimate findings and conclusions. With respect to the assertion that Peeks had slurred speech, the trial court

stated repeatedly that it did not hear any slurred speech on the video recording, but also conceded that the audio quality of the recording was poor. The court did not squarely address the apparent conflict between Officer Willis's testimony that Peeks had slurred speech and the court's own observations from the video. The trial court likewise stated it could not see any evidence in the video that Peeks demonstrated impaired motor skills, but did not resolve the apparent conflict between that observation and Officer Willis's testimony by reaching a finding as to whether Peeks's motor skills were impaired at the time of the stop. With respect to Officer Willis's testimony that Peeks stared straight ahead and refused to make eye contact, the trial court stated "[t]he no eye contact, I don't know what that means, if anything." (Apr. 22, 2019 Tr. at 10-11.) Similarly, regarding Officer Willis's testimony that Peeks was overly nervous and tense, the trial court stated "[t]he fact he was nervous, I don't credit that a whole lot." (Apr. 22, 2019 Tr. at 11.) However, the trial court failed to make any clear findings or conclusions regarding the alleged lack of eye contact and nervousness.

{¶ 22} In this case, similar to the cases discussed above, the trial court failed to make essential findings on several issues relevant to the determination of whether Officer Willis had reasonable suspicion to support a *Terry* frisk or probable cause to arrest Peeks for OVI. As in *Forrest*, the trial court's discussion of the evidence failed to include findings that adequately explained its decision to grant the motion to suppress because it did not articulate in its findings of fact the evidence on which it concluded Officer Willis lacked reasonable suspicion to conduct a *Terry* frisk or probable cause to arrest Peeks for OVI. *See Forrest* at ¶ 21-23. Under these circumstances, the record is insufficient to allow effective appellate review of the trial court's decision to grant the motion to suppress. Therefore, we reverse the trial court's decision and remand the matter for findings of fact and conclusions of law that explain why the evidence presented warrants the trial court's decision. *See Forrest* at ¶ 23.

{¶ 23} Accordingly, we sustain the state's first assignment of error.

{¶ 24} Having concluded the state's first assignment of error requires reversal and remand of the trial court's decision for further proceedings, the state's three remaining assignments of error are rendered moot.

## IV. Conclusion

{¶ 25} For the foregoing reasons, we sustain the state's first assignment of error, which renders moot the state's second, third, and fourth assignments of error. We reverse the judgment of the Franklin County Court of Common Pleas and remand this case to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed*
*and cause remanded.*

BROWN and BEATTY BLUNT, JJ., concur.